# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Select Comfort Corporation; and
Select Comfort SC Corporation,

             Plaintiffs,

v.

John Baxter; Dires, LLC d/b/a
Personal Touch Beds and Personal Comfort
Beds; Digi Craft Agency, LLC; Direct
Commerce, LLC d/b/a Personal Touch
Beds; Scott Stenzel; and Craig Miller,

             Defendants.

Civil No. 12-2899 (DWF/SER)

**MEMORANDUM
OPINION AND ORDER**

---

Andrew S. Hansen, Esq., Elizabeth A. Patton, Esq., and Heidi O. Fisher, Esq., Fox
Rothschild LLP, counsel for Plaintiffs.

Barbara P. Berens, Esq., Carrie L. Zochert, Esq., and Erin K. Fogarty Lisle, Esq., Berens
& Miller, PA, counsel for Defendant John Baxter.

Cassandra B. Merrick, Esq., Christopher W. Madel, Esq., Jennifer M. Robbins, Esq.,
Madel PA, counsel for Defendants Dires, LLC, d/b/a Personal Touch Beds and
Personal Comfort Beds, Scott Stenzel, and Craig Miller.

---

## INTRODUCTION

This matter is before the Court on numerous post-trial motions. These motions

include Plaintiffs Select Comfort Corporation and Select Comfort SC Corporation's

("Select Comfort") Motion for Determination of Entitlement to Attorneys' Fees and

Non-Taxable Expenses (Doc. No. 640), Motion for Renewed Judgment as a Matter of

Law, to Amend the Verdict, and/or for a New Trial (Doc. No. 643), Motion to Increase the Damages Award (Doc. No. 654), and Motion for Permanent Injunction (Doc. No. 668); as well Defendants Dires, LLC, Craig Miller, Scott Stenzel, and John Baxter's Motion for Determination of Entitlement to Attorneys' Fees and Costs (Doc. No. 655) and Amended Renewed Motion for Judgment as a Matter of Law and For a New Trial (Doc. No. 644).[1]

## BACKGROUND

The factual and procedural background of this litigation is extensively set forth in prior orders and will not be repeated here. In summary, Select Comfort brought multiple claims against Defendants, including claims for trademark infringement, trademark dilution, false advertising, unfair competition, and related state-law claims. After trial, the jury returned a verdict, making the following relevant findings:

**Trademark Infringement:** Defendants did not infringe Select Comfort's trademark rights in SLEEP NUMBER, WHAT'S YOUR SLEEP NUMBER?, SELECT COMFORT, or COMFORTAIRE. (Doc. No. 575 ("Special Verdict") at 2-3.)

**Trademark Dilution:** Select Comfort's SLEEP NUMBER mark is famous, but Defendants' advertising did not dilute the mark. (*Id*. at 6.)

**Unfair Competition:** Defendants' use of NUMBER BED did not constitute unfair competition. (*Id*. at 8.)

---

[1]    Defendants' motions at Doc. Nos. 617 and 632 are moot in light of the present motions.

**False Advertising:**  At trial, Select Comfort alleged Defendants made 14 false statements. The jury found in favor of Select Comfort on the following statements:[2]

1. Personal Touch is Preferred 6 to 1 Over Sleep Number;[3]

2. Personal Comfort, or we, sold patents to Sleep Number (or Sleep Number purchased patents from Personal Comfort, or us);

3. Sleep Number bed parts are not replaceable or changeable (e.g. Sleep Number bed chambers or foam are not replaceable or changeable).

4. Sleep Number paid Personal Comfort not to compete or to manufacture mattresses.

5. Personal Comfort is FDA regulated/certified/approved or Personal Comfort sells FDA registered mattresses.

6. Personal Comfort is owned and operated by a FDA registered medical device manufacturing company.

7. Personal Comfort beds come with "no sales tax" or are "tax free."

(*Id*. at 13-56.)  The jury found that statements 1, 2, and 3 were made with an intent to deceive consumers.  (*Id*. at 14, 24, 31.)  The jury found that the remaining false statements were made with no intent to deceive customers.

**Counterclaim:**  In considering Defendants' Counterclaim, the jury determined that Select Comfort does *not* have trademark rights in NUMBER BED.  (*Id*. at 66.)

**Damages:**  The jury found that Select Comfort did not suffer lost profits as a result of Defendants' conduct, but did find that Defendants obtained a wrongful benefit in

---

[2] The jury found in favor of Defendants (no liability) on the remaining statements.

[3] This statement was made by DigiCraft Agency, LLC and/or Direct Commerce, LLC d/b/a Personal Touch Beds.

the amount of $155,721. (*Id*. at 65 ($120,812 attributed to Dires and $34,909 attributed to Direct Commerce).)

The matter is now before the Court on the parties' post-trial motions.

## DISCUSSION

### I. Select Comfort's Renewed Motion for Judgment as a Matter of law, to Amend the Verdict, and/or for a New Trial

Select Comfort moves for judgment as a matter of law, to alter or amend the verdict, and/or to grant a new trial. In support, Select Comfort argues that the Court committed several prejudicial errors. Defendants oppose the motion, arguing that the Court did not commit any legal error and, even if it did, any such error did not prejudice Select Comfort.

#### A. Legal Standards

A court may render judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for that party on that issue." Fed. R. Civ. P. 50(a). Under Rule 50, judgment as a matter of law is appropriate only if no reasonable jury could have returned a verdict for the nonmoving party. *Weber v. Strippit, Inc.*, 186 F.3d 907, 912 (8th Cir. 1999). In analyzing a Rule 50 motion, a court must consider the evidence in the light most favorable to the non-moving party, resolve all factual conflicts in the non-moving party's favor, and give the non-movant the benefit of all reasonable inferences. *Id.* "Judgment as a matter of law is proper when the record contains no proof beyond speculation to support the verdict." *Heating & Air Specialists,*

*Inc. v. Jones*, 180 F.3d 923, 932-33 (8th Cir. 1999). "A jury verdict will not be set aside unless there is a complete absence of probative facts to support a verdict." *Walsh v. Nat'l Computer Sys., Inc.*, 332 F.3d 1150, 1158 (8th Cir. 2003) (quotation omitted).

Under Rule 59, a "court may, on motion, grant a new trial on all or some of the issues--and to any party . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). The standard for granting a new trial is whether the verdict is against "the great weight of the evidence." *Butler v. French*, 83 F.3d 942, 944 (8th Cir. 1996). The Eighth Circuit explained that:

> [A] trial court may not grant a new trial simply because the trial court would have found a verdict different from the one the jury found. This is certainly a necessary condition to granting a motion for new trial, but it is not a sufficient one. Rather, the trial court must believe, as we have already said, that the verdict was so contrary to the evidence as to amount to a miscarriage of justice.

*Id.* A new trial is also appropriate where legal errors at trial result in a miscarriage of justice. *Gray v. Bicknell*, 86 F.3d 1472, 1480-81 (8th Cir. 1996). Evidentiary errors warrant a new trial only when "the cumulative effect of the errors is to substantially influence the jury's verdict." *Williams v. City of Kan. City, Mo.*, 223 F.3d 749, 755 (8th Cir. 2000). A new trial also may be ordered if the Court erred in instructing the jury on the applicable law. *T.H.S. Northstar Assocs. v. W.R. Grace & Co.-Conn.*, 860 F. Supp. 640, 650 (D. Minn. 1994), *vacated on other grounds*, 66 F.3d 173 (8th Cir. 1995). The Court, however, has broad discretion in framing instructions and need not give every proposed instruction provided that the court adequately presents the law and the issues to

the jury. *Fleming v. Harris*, 39 F.3d 905, 907 (8th Cir. 1994). Moreover, the instructions are to be considered in their entirety to determine whether, when read as a whole, the charge fairly and adequately submits the issues to the jury. *Id.* "A single erroneous instruction will not necessarily require reversal." *Id.* The harmless error rule applies to jury instructions. *Laubach v. Otis Elevator Co.*, 37 F.3d 427, 429 (8th Cir. 1994).

"[D]istrict courts enjoy broad discretion in choosing whether to grant a new trial." *Pulla v. Amoco Oil Co.*, 72 F.3d 648, 656 (8th Cir. 1995). A district court reviewing a motion for a new trial is "not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because [the court] feel[s] that other results are more reasonable." *Fireman's Fund Ins. Co. v. Aalco Wrecking Co., Inc.*, 466 F.2d 179, 186 (8th Cir. 1972) (citation omitted).

A motion to amend under Federal Rule of Civil Procedure 59(e) serves the "limited function of correcting manifest errors of law or fact or to present newly discovered evidence." *United States v. Metro. St. Louis Sewer Dist.*, 440 F.3d 930, 933 (8th Cir. 2006) (internal quotation marks omitted). A Rule 59(e) motion is not a vehicle to introduce new evidence, tender new legal theories, or raise arguments that could have been offered or raised before the Court entered judgment. *Id.*

### B.    Trademark Infringement

Select Comfort argues that the Court made the following prejudicial errors that require amending the verdict or granting a new trial on its trademark infringement claims: (1) disallowing Select Comfort from pursuing an initial interest claim; (2) applying the wrong standards and burdens under the Lanham Act in jury instructions; and (3) allowing

Defendants' bed demonstration.  In addition, Select Comfort argues that despite these errors, it offered overwhelming evidence that Defendants used Select Comfort's marks (or similar words/phrases) in a manner likely to cause customer confusion as to the source of sponsorship of the goods and, therefore, that the jury's verdict on the trademark infringement claims was contrary to this evidence.

          1)      Initial Interest Confusion Doctrine

Select Comfort first argues that the Court erred by not allowing it to pursue an initial interest claim.  Select Comfort argues that it should have been allowed to pursue the theory that significant confusion at the initial point that consumers viewed on-line advertisements is all that was required to establish liability under the Lanham Act, and that it was error to instruct the jury that a showing of a likelihood of confusion at the time of purchase was required.  Defendants argue that the Court's rulings on the initial interest doctrine were correct.

In its order granting in part and denying in part the parties' motions for summary judgment, the Court held that Select Comfort's trademark infringement claim requires a showing of a likelihood of confusion at the time of purchase.  In so holding, the Court explained that in *Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 766 (8th Cir. 2010), the Eighth Circuit declined to formally adopt the "initial interest confusion" doctrine and explained that "even if the doctrine applied generally in this circuit, it would not apply" where, "although the products are similar, . . . the customers are sophisticated and exercise a relatively high degree of care in making their purchasing decisions."  *Id.*  As explained previously, the initial interest doctrine would not apply to

the facts of this case because the beds at issue were purchased on-line and are expensive, suggesting that consumers would exercise a high degree of care in making any such purchase. The Court discerns no error in its ruling on initial interest confusion. Importantly, the Court notes that it did not hold that initial interest confusion was irrelevant to the issue of whether there was a likelihood of confusion (or that the jury could not consider evidence of such confusion), but only that such confusion *alone* would not result in liability. Moreover, Select Comfort's theory of liability in this case centers on the contention that Defendants capitalize on consumers being confused *initially* at the point-of-click on-line, thus diverting the consumers to Defendants' website and then fostering that confusion and/or replacing it with false claims. Select Comfort was free to submit evidence of point-of-click confusion to support a showing of likelihood of confusion between the purchasing alternatives at the time of purchase. In addition, Select Comfort separately asserted false advertising claims, some of which were successful at trial.

2)      Jury Instructions

Similarly, based on its arguments regarding the initial interest confusion doctrine, Select Comfort argues that the Court applied the wrong standards and burdens under the Lanham Act in its jury instructions. Specifically, Select Comfort argues that: the jury instructions improperly restricted the jury to determining whether there was a likelihood of confusion at the time of purchase; without a definition of "time of purchase," the jury understood that consumers must actually purchase Defendants' products while confused; the Court should have instructed the jury that confusion occurring at other points in the

8

sale and service process is relevant to whether confusion is likely to occur at the time of purchase; the Court should have indicated that actionable confusion includes confusion as to where consumers can purchase a product; and because Defendants' survey expert indicated that the "essence" of confusion is source confusion, without a corrective instruction, the jury was left believing that actionable confusion is limited to source confusion. Further, with respect to the issue of abatement, Select Comfort argues that if at any point it showed a likelihood of confusion (including initial interest confusion), the burden shifted to Defendants to show by clear and convincing evidence that efforts to abate confusion were successful. Finally, Select Comfort contends that the Court erred by not instructing the jury on "actionable" confusion or providing a definition of "appreciable."

In relevant part, the Court offered the following instructions to the jury:

## PLAINTIFFS' CLAIM OF TRADEMARK INFRINGEMENT

Plaintiffs claim that Defendants' advertising constitutes trademark infringement. Plaintiffs have the burden of proving infringement by a preponderance of the evidence.

The Lanham Act recognizes a cause of action for infringement of a federally registered mark where use of a mark is likely to cause confusion, mistake, or deception. *To establish trademark infringement, the owner of a trademark must demonstrate that the defendant's alleged infringing was likely to cause confusion among consumers regarding the origin, sponsorship, affiliation or approval of the defendant's product.*

For their claims that Defendants infringed their trademarks, Plaintiffs must prove by a preponderance of the evidence that Defendants used Plaintiffs' trademarks or a similar word or phrase in connection with a product and that use is likely to cause confusion as to the origin, sponsorship, affiliation or approval of the product. The core element of trademark infringement is whether Defendants' use of a term creates a

likelihood that the consuming public will be confused. Plaintiffs must prove that a likelihood of confusion is probable, not merely possible.

## LIKELIHOOD OF CONFUSION FACTORS

In determining whether there is a likelihood of confusion at the time of purchase, you may consider the following six factors:

1. the strength of the trademark:
2. the similarity between Plaintiffs' trademark and the allegedly infringing term or terms;
3. the degree to which the allegedly infringing product competes with Plaintiff's products;
4. whether Defendants intended to confuse the public;
5. the degree of care reasonably expected of potential customers and the type of product, its cost, and conditions of purchase; and
6. evidence, if any, of actual confusion.

However, no one factor should control the outcome of your analysis. The factors guide the analysis, but the ultimate determination of whether confusion at the time of purchase is likely is not to be mechanically determined through rigid application of the factors. The ultimate inquiry always is whether, considering all of the circumstances, a likelihood exists that consumers, at the time they are purchasing Defendants' product, will be confused. The factors are useful only to the extent they answer the ultimate question. The question to be answered is whether an appreciable number of relevant consumers are likely to be confused.

*Plaintiffs must prove a likelihood of confusion at the time of purchase. Your analysis of whether Plaintiffs have established likelihood of confusion at the time of purchase must occur in a context that recognizes how consumers encounter the products and how carefully consumers are likely to scrutinize the words at issue.*

If you find by a preponderance of the evidence that Plaintiffs have proved a likelihood of confusion at the time of purchase, then and only then may you find Defendants liable for trademark infringement. You will then consider the question of damages under separate instructions.

(Doc. No. 568 ("Jury Instructions") at 14-16 (emphasis added).)

The jury was not instructed that a showing of a likelihood of confusion at the

"time of purchase" required proof that customers actually purchased beds while confused.

The instruction specifically stated that Select Comfort was required to prove *a likelihood of confusion* at the time of purchase. The Court did not preclude Select Comfort from offering evidence of confusion at any stage of interest up to the point of sale and arguing that any early confusion persisted. As explained above, the Court ruled that initial interest confusion, in this case, was not enough *alone* to prevail. Select Comfort was free to, and indeed did, argue that confusion at an earlier point of the process was relevant to whether consumers were likely to be confused at the time of purchase. Moreover, the record contains testimony at trial discussing different "points-of-sale," including Defendants' call centers and website. Further, because the Court determined that Select Comfort must demonstrate a likelihood of confusion at the time of purchase, an abatement instruction would have been inconsistent.

As to Select Comfort's argument that the Court's failure to issue an instruction stating that actionable confusion includes confusion as to where a consumer can purchase a product, the Court points to the following language of the jury instructions:

> For their claims that Defendants infringed their trademarks, Plaintiffs must prove by a preponderance of the evidence that Defendants used Plaintiffs' trademarks or a similar word or phrase in connection with a product and that use is likely to cause confusion *as to the origin, sponsorship, affiliation or approval of the product*. The core element of trademark infringement is whether Defendants' use of a term creates a likelihood that the consuming public will be confused.

This is a correct statement of the law on confusion and does not limit "actionable confusion" to source confusion. Finally, the Court rejects Select Comfort's argument that the jury could not know the meaning of "appreciable" without a specific instruction.

For the above reasons, the Court discerns no errors in its instructions that would warrant the relief sought by Select Comfort. And if there was an error, there has been no showing that such an error was prejudicial, particularly when the instructions are read as a whole.

### 3) Bed Demonstration

During trial, the Court allowed Craig Miller, Manager of Dires, LLC, to put together 2017 models of a Personal Comfort A8 bed and a Sleep Number i8 bed for demonstrative purposes. Select Comfort contends that the Court erred in allowing the use of these demonstratives because the testimony was undisclosed in discovery, the testimony was the equivalent of expert testimony, and the bed models used were not the those at issue in this case, making Miller's testimony irrelevant, prejudicial, and inadmissible.

The Court disagrees. First, the Court has broad discretion to permit the use of demonstrative evidence at trial. Here, the use of the bed models was for demonstrative purposes only. The beds were not admitted into evidence and the jury did not have the opportunity to inspect them. Miller's testimony regarding the bed models was lay, not expert, testimony. The Court indicated it would not allow expert testimony and Miller did not offer any ultimate opinions regarding the beds or their quality. In addition, the Court gave a limiting instruction both before the testimony and in the final instructions. Specifically, at trial, the Court instructed the jury as follows:

> Before I begin I'm actually going to give you a short instruction that actually was part of my opening instructions. There's certain demonstrative exhibits in trials that may be shown to you in order to help

explain the case.  And demonstrative exhibits are used for your convenience and for the parties.  In this case, even though these beds are not the actual beds—and the lawyers will discuss any similarities and differences—from the relevant timeframe, and they are not themselves evidence or proof of any facts.  So if they do not correctly reflect the facts shown by evidence in the case, you should disregard these demonstrative exhibits and determine the facts from the underlying evidence.  However, as a demonstrative exhibit they are used for convenience in order to help explain aspects of the case.

(Trial Tr. Vol. VII at 1719-20; *see also* Jury Instructions at 4.)  Miller also testified that

the demonstrative beds were 2017 models and, while recognizing that the relevant

damages period in this case was September 2012 through December 2014, Miller also

explained the differences between prior models and the 2017 model.  This testimony

provided background information that was helpful to the jury.  The Court concludes that

there was no error allowing Miller's testimony and the use of demonstratives.

### 4)     Jury's Trademark Infringement Verdict

At the end of trial, the jury returned a verdict for Defendants on every one of

Select Comfort's trademark infringement claims.  Select Comfort argues that this verdict

was contrary to the evidence because Select Comfort offered overwhelming evidence that

Defendants used Select Comfort's marks—or similar words/phrases—in a manner likely

to cause customer confusion as to the source or sponsorship of goods.

Specifically, Select Comfort argues that it presented significant evidence of:

(1) actual customer confusion, including dozens of examples of confusion at the time

customers purchased Defendants' products and consumer survey evidence that

Defendants' use of Select Comfort's trademarks in their pay-per-click ads confused a

significant percentage of customers; (2) Defendants' intent to confuse (thus raising an

inference of likelihood of confusion); (3) similarity between the marks; (4) strength of their own marks; (5) direct competition between the parties' products; and (6) the degree of care used by customers (namely a lack of evidence that online bed shoppers utilize enhanced care when purchasing).

Defendants argue that the evidence offered at trial supported the jury's verdict on trademark infringement.  In particular, Defendants submit that the evidence presented to the jury established that:  (1) Select Comfort's marks are weak; (2) Defendants do not use Select Comfort's marks as they are registered, thus showing a lack of similarity; (3) there is a substantial difference between the selling channels of the parties; (4) there was a lack of evidence of intent to deceive; (5) Select Comfort failed to show a likelihood of confusion at the time of purchase by a legally cognizable number of consumers; and (6) Select Comfort failed to show that they were damaged by Defendants' conduct. Defendants argue that the above evidence undercuts any likelihood of confusion.

Having carefully reviewed the record in this case, and considering the evidence in the light most favorable to Defendants, the Court concludes that Select Comfort is not entitled to judgment as a matter of law on the issue of trademark infringement.  Instead, based on the evidence in the record, a reasonable jury could conclude that Select Comfort failed to demonstrate a likelihood of confusion.  Indeed, the evidence at trial could have reasonably led the jury to conclude, among other things, that Select Comfort's trademarks are weak; that the selling channels used by the parties are substantially different—with Select Comfort selling their bed primarily in stores and using their website primarily to drive consumers to their stores, while Defendants sell exclusively online or over the

phone; and that the evidence at trial failed to show a likelihood of confusion at the time of purchase by a legally cognizable number of consumers.

Based on the above, the Court concludes that there is a sufficient evidentiary basis for the jury's verdict on trademark infringement. Therefore, Select Comfort's motion for judgment as a matter of law is properly denied. Moreover, none of the alleged errors of law that Select Comfort argues occurred at trial warrant a new trial on the issue of trademark infringement. In addition, Select Comfort has failed to show that a new trial is required to avoid a miscarriage of justice. Instead, the verdict is supported by substantial evidence, and Select Comfort's motion is respectfully denied.

### C.     Trademark Dilution

As to Select Comfort's trademark dilution claim, the jury found that the SLEEP NUMBER mark is famous, but that Defendants' advertising did not dilute the mark. (Special Verdict at 6.) Select Comfort moves to amend the verdict or for a new trial on its trademark dilution claim, arguing that the jury appropriately found the Sleep Number mark to be famous, but erred by finding no liability for dilution despite evidence of blurring and tarnishing. In addition, Select Comfort argues that the Court gave an inaccurate jury instruction that Defendants' counsel prejudicially referred to during closing argument.

The Court concludes that the jury's determinations that SLEEP NUMBER is famous and that Defendants did not dilute the mark are both supported by the evidence, and therefore the verdict is not against the "great weight of evidence" so as to amount to

a miscarriage of justice.  Accordingly, Select Comfort's motion for a new trial and to amend the verdict on the trademark dilution claim is denied.

Select Comfort also argues that the Court erred in a jury instruction that references "free-riding" and that Defendants prejudicially referred to the instruction during the closing statement.  The portion of the jury instruction that Select Comfort refers to reads as follows:

> Whether the user of the similar terms intended to create an association with the famous trademark.  Evidence of Defendants' intent could be probative of the fact that such an association exists.  However, such evidence does not create a presumption or admission of actual association.  There must also be injury to the famous trademark.  Anti-dilution law does not prohibit free-riding.

(Jury Instructions at 40.)  Importantly, the full text of the Jury Instructions on dilution, blurring, and tarnishing clearly places the burden on Select Comfort to establish "injury to the famous trademark."  In addition, the Court fully instructed the jury on both "blurring" and "tarnishing."  (*Id.* at 40, 41.)  These instructions are proper.  And as to Defendants' reference to "free-riding" at closing, the Court notes that Select Comfort did not object at the time and, therefore, has waived the objection.  *See Vang v. Prataya*, Civ. No. 12-1847, 2017 WL 3732106, at *2 (D. Minn. Aug. 29, 2017).  Even so, in light of the full instructions on dilution, there was no prejudice.

### D.    Defendants' Counterclaim

At trial, the jury also considered Defendants' counterclaim that NUMBER BED is generic or descriptive and not capable of functioning as a trademark.  The jury determined that Select Comfort does not have trademark rights in NUMBER BED.

16

(Special Verdict at 66.)  Because the jury made this finding, it did not answer the

questions of whether NUMBER BED was generic or descriptive, or whether the mark has

secondary meaning.  (*Id.*)

Select Comfort argues that the Court erred by failing to place the burden of proof

on Defendants to establish that NUMBER BED is generic or descriptive and by refusing

to issue Select Comfort's requested jury instruction that trademark rights can be created

through the public's use of a shorthand of a mark.  In addition, Select Comfort argues that

the jury's verdict on Defendants' counterclaim was contrary to the evidence because the

evidence at trial confirmed that NUMBER BED is associated with a single source—Sleep

Number.  Specifically, Select Comfort points to the evidence of a secondary meaning

survey demonstrating that nearly half of respondents associated NUMBER BED with a

single company, that a substantial number of respondents identified that company as

Sleep Number or Select Comfort, and that of those stating an opinion, 84% identified

NUMBER BED as associated with a single company.  Select Comfort also points to

expert testimony explaining that the above results are indicative of secondary meaning.

Select Comfort argues that the evidence at trial demonstrates that NUMBER BED is not a

category and that the phrase did not exist until Select Comfort coined and heavily

marketed Sleep Number.  Select Comfort maintains that Defendants, their manufacturer,

and customers refer to the category of products as "air beds," "adjustable air beds," or

"air mattresses," and not "number beds."  In light of the above, Select Comfort requests

that the Court grant judgment as a matter of law, amend the verdict, or grant a new trial

on Defendants' counterclaim.

Defendants argue that the jury instructions regarding their counterclaim correctly outlined the burden of proof and that the jury's verdict that Select Comfort does not have trademark rights in NUMBER BED was supported by the evidence at trial. Defendants cite to: evidence that Select Comfort never sought to register "number bed"; testimony that Select Comfort did not use "number bed" standing alone to promote its products; and evidence that Select Comfort's advertising agency did not monitor use of "number bed" for trademark violations. Defendants also cast doubt on Select Comfort's secondary meaning survey, pointing out that: the survey showed that the majority of relevant consumers (52%) did not associate "number bed" with any one company; the survey participants who did associate the phrase with one company were not asked to identify that company; Select Comfort's Vice President of Media testified that a different internal survey showed the number of people that recognized the phrase "number bed" was less than 1%. Moreover, Defendants point to evidence that many competitors of Select Comfort used the phrase "number bed" in commerce and advertisements.

The Court instructed the jury on "Obtaining a Trademark" as follows:

> A person acquires the right to exclude others from using a trademark by being the first to use the trademark in the marketplace. Rights in a trademark are obtained through commercial use of the trademark. *In order to obtain rights in a trademark, the person must use the term, device, or symbol to identify the source or origin of their goods.*

(Jury Instructions at 12 (emphasis added).) Based on the jury's determination that Select Comfort did not have any trademark rights in NUMBER BED, it never reached the issue of whether the mark was generic or descriptive. The Court discerns no error regarding its explanation of the acquisition of trademark rights. Defendants are correct in noting that

"use as a trademark is essential and is a gateway requirement . . . [and i]f a designation is not used as a mark, then it cannot possibly achieve a secondary meaning and trademark status." J. Thomas McCarthy, MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 3.4 (4th ed. 2015).)

Considering the evidence in the light most favorable to Defendants, and resolving any factual conflicts in their favor, the Court concludes that there was ample evidence to support a reasonable finding by the jury that Select Comfort has no trademark rights in NUMBER BED and the finding was not against the great weight of evidence. Accordingly, the Court respectfully denies Select Comfort's motion as to the jury's finding on Defendants' counterclaim.

### E.     Select Comfort's Unfair Competition Claim

The jury found in favor of Defendants on Select Comfort's unfair competition claims regarding Defendants' use of NUMBER BED. (Special Verdict at 8.) Select Comfort argues that it proved that Defendants' use of NUMBER BED constitutes unfair competition because regardless of whether NUMBER BED is registered, or registerable, there was substantial evidence that the mark has acquired secondary meaning, consumers associated it with one source, and Defendants' use causes customer confusion. Accordingly, Select Comfort maintains that it is entitled to an amended verdict in its favor on this claim or a new trial.

Defendants argue that Select Comfort's unfair competition claim was properly rejected by the jury for the same reasons with respect to Defendants' counterclaim above. The Court agrees. The jury's verdict on the unfair competition claims stands for the same

reasons stated above with respect to Defendants' counterclaim, namely that there is

sufficient evidence to support the jury's verdict that Select Comfort does not have

trademark rights in NUMBER BED.

### F.      Select Comfort's False Advertising & MDTPA Claims

To prevail on a claim under the false or deceptive advertising prong of the Lanham

Act, a plaintiff must show:

> (1) a false statement of fact by the defendant in a commercial advertisement
> about its own or another's product; (2) the statement actually deceived or
> has the tendency to deceive a substantial segment of its audience; (3) the
> deception is material, in that it is likely to influence the purchasing
> decision; (4) the defendant caused its false statement to enter interstate
> commerce; and (5) the plaintiff has been or is likely to be injured as a result
> of the false statement, either by direct diversion of sales from itself to
> defendant or by a loss of goodwill associated with its products.

*United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998).  A false

statement falls into two categories:  "(1) commercial claims that are literally false as a

factual matter; and (2) claims that may be literally true or ambiguous but which implicitly

convey a false impression, are misleading in context, or likely to deceive consumers."  *Id*.

 "The standard for proving literal falsity is rigorous" and "only an *unambiguous* message

can be literally false."  *Buetow v. A.L.S. Enters.*, 650 F.3d 1178, 1185 (8th Cir. 2011)

(citation omitted) (emphasis in original).  A literal falsity argument fails when an

advertisement can reasonably be understood as conveying different messages.  *Id*.  If a

statement is literally false, no extrinsic evidence of consumer deception is required.  *Time

Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007).  When a claim

is not literally false, but misleading, proof that the advertising actually conveyed the

implied message and deceived a significant portion of the recipients is critical, and the success of such a claim normally turns on consumer survey evidence. *United Indus. Corp.*, 140 F.3d at 1182-83.

Select Comfort asserts that certain aspects of the jury's verdict on the false advertising claims are contrary to the evidence. For example, as to the statements that the jury found no liability, Select Comfort argues there is evidence that the statements were literally false or that they were misleading.[4] Specifically, Select Comfort asserts that Craig Miller, Manager of Dires, LLC, admitted that the statements are "false" or "literally false." These five statements are: (1) "Personal Comfort is Preferred 6 to 1 over Sleep Number" (the jury found that this statement was not disseminated in commercial advertising); (2) Personal Comfort was, or we were, involved in designing or developing Sleep Number beds; (3) Personal Comfort has, or we have, been in the business since the 1970's and/or longer than Sleep Number; (4) Personal Comfort beds are "medical grade"; and (5) Personal Comfort beds are Made in the USA. Select Comfort argues that because Miller admitted that the above five statements are literally false, the jury should have found as much and applied the presumptions that go along with such a finding.

In addition, Select Comfort takes issue with four additional statements for which the jury did not find liability. Select Comfort argues that: (1) the claim that "Personal Comfort is preferred over Sleep Number" is false because there is no substantiation for that claim; (2) it is false or misleading to say that Personal Comfort beds are an upgraded

---

[4]       The same arguments and evidence pertain to Select Comfort's MDTPA claim.

version of Sleep Number beds because they are, in fact, not a version of Sleep Number

beds; (3) it is false or misleading to state or suggest that Defendants sell Number Beds

because customers associate Number Bed with Sleep Number; and (4) the jury

improperly determined that Defendants overcame the presumption of deception as to its

claim that Personal Beds are "identical" to or the "same" as Sleep Number beds because

Defendants did not offer actual evidence to overcome the presumption. Select Comfort

argues that evidence at trial shows that Defendants made the above statements numerous

times to customers over the phone, in e-mail, through live-chat, and on Defendants'

website; the statements are likely to deceive; the statements are material; and the

statements are likely to injure Select Comfort. Based on these arguments, Select Comfort

submits that the Court should grant its motion for judgment as a matter of law, or to

amend the verdict—finding liability, including individual liability, and willfulness—or to

grant its motion for a new trial.

      Defendants oppose Select Comfort's motion on the false advertising claims. First,

Select Comfort reiterates that false statements fall into one of two categories:

(1) commercial statements or claims that are literally false; and (2) statements that may

be literally true, but which implicitly convey a false impression, or are misleading in

context or are likely to deceive consumers. In addition, Defendants reiterate that to

establish falsity under the second category, a plaintiff must establish that the challenged

statement actually deceived a significant portion of the recipients by reliable consumer

survey evidence. Defendants argue that Select Comfort did not produce viable consumer

survey evidence showing actual consumer deception and, therefore, that it must prove

literal falsity. Defendants further submit that despite Miller's testimony on cross-examination, Select Comfort's literal falsity argument fails because the statements could be reasonably understood as conveying different messages. Moreover, Defendants submit that Select Comfort failed to establish that the statements actually deceived or tended to deceive a large segment of its audience. Defendants further argue that, even if Select Comfort had established literal falsity, they would still have to (and did not) demonstrate that the statements were material—that they were likely to influence buying decisions or that Select Comfort suffered any damages attributable to the allegedly false statements.

With respect to damages, Defendants submit that Select Comfort failed to offer evidence of causation (evidence to suggest that sales were made because of the statements or evidence that any consumers felt misled) or proof of economic or reputational injury flowing from any false statement (that the statements were material). Defendants submit that the evidence at trial supported the jury's verdict that Defendants cause little, if any, damage to Select Comfort. Finally, Defendants submit that the Select Comfort failed to submit evidence to demonstrate that Defendants willfully intended to engage in false advertising.

The Court has carefully reviewed the record and the parties' respective arguments. Considering the evidence in the light most favorable to Defendants, and resolving any factual conflicts in their favor, the Court concludes that there was ample evidence to support the jury's reasonable findings on the false advertising claims. Accordingly, the jury's findings are not against the great weight of evidence. Therefore, the Court

respectfully denies Select Comfort's motion as to the jury's findings on the false advertising claims.

## G. Additional Alleged Errors

Select Comfort argues that the Court committed four additional prejudicial errors of law that justify the granting of its motions. These alleged errors include: (1) inappropriately allowing the admission of certain exhibits and testimony, including testimony on Select Comfort's search engine optimization ("SEO") efforts and keyword purchasing, Select Comfort's enforcement efforts, and complaints regarding Sleep Number beds; (2) refusing to allow Select Comfort's summary exhibits detailing confusion and false advertising into the jury deliberation room; (3) not sufficiently answering the jury's question regarding whether Defendants' use of NUMBER BED constituted false advertising because the Court did not explain that the jury could consider how Defendants' use NUMBER BED in the full context of their ads; and (4) allowing Defendants' counsel to introduce websites, documents, and statements outside of the record, culminating in an improper closing argument.

The Court finds no merit to any of the above arguments. First, the Court noted that it would allow the parties to educate the jury on SEO as background information, but that it would also prohibit any characterization of such evidence as "unclean hands or misconduct." In addition, while evidence of other litigation was to be presumptively inadmissible, Select Comfort opened the door on this evidence. Second, the Court enjoys broad discretion in determining which exhibits to—or not to—allow into the jury deliberation room. Further, Select Comfort has not demonstrated any prejudice resulting

from the exclusion of its summary exhibits. Third, the Court answered the jury's

question regarding Defendants use of NUMBER BED as follows:

> QUESTION:
> P. 60 Q1:
> Is Defendant's use of the phrase NUMBER BED in its advertising a false
> or misleading claim that Defendants sell Sleep Number beds?
>
> Q: Is the phrase in question to be considered on its own, or in conjunction
> with other words? i.e., "Sleep 50% Off Number Bed."
>
> ANSWER:
> The phrase in question should be considered by you, the jury, based upon
> your evaluation of all of the evidence in the case, consistent with the
> Court's jury instructions, including the jury instructions relating to False
> Advertising.

(Doc. No. 577.) The false advertising jury instructions, in turn, explained, among other

things, that in considering what constitutes a "false statement" the jury should consider

the context. (Jury Instructions at 44-45.) Fourth, Select Comfort did not object to any

references to any improperly introduced websites, documents, or statements during

Defendants' closing. And the Court issued a curative instruction at trial with respect to a

reference to testimony that was not introduced at trial. The Court concludes that none of

the above constitutes prejudicial error.

## II.     Select Comfort's Motion to Increase the Damages Award

Under the Lanham Act, a successful plaintiff may recover, "subject to the

principles of equity" any damages sustained by the plaintiff, defendant's profits, and the

costs of the action. 15 U.S.C. § 1117(a). In addition, a court may "enter judgment,

according to the circumstances of the case, for any sum above the amount found as actual

damages, not exceeding three times such amount." *Id*. And if a court "find[s] that the

amount of the recovery based on profits is either inadequate or excessive, the court may, in its discretion, enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id.* Any such sum "shall constitute compensation and not a penalty." *Id.*; *see also Metric & Multistandard Components Corp. v. Metric's, Inc.*, 635 F.2d 710, 715 (8th Cir. 1980); *Wildlife Research Ctr., Inc. v. Robinson Outdoors, Inc.*, 409 F. Supp. 2d 1131, 1135 (D. Minn. 2005) (explaining that the court has "broad discretion to award monetary relief 'necessary to serve the interests of justice'").

At trial, the jury considered Select Comfort's trademark infringement, trademark dilution, false advertising, unfair competition and related state-law claims. Ultimately, the jury found in favor of Defendants on all claims except for a portion of Select Comfort's false advertising and MDTPA claims. Specifically, Select Comfort prevailed on its false advertising claims against Defendants with respect to seven asserted false statements. The jury also determined that three of these statements were made "deliberately" and "with the intent to deceive consumers."[5] The jury then awarded Select Comfort $155,721 in damages ($120,812 attributable to Dires and $34,909 attributable to Direct Commerce). (Special Verdict at 65.)

Select Comfort contends that that the jury's award is inadequate and asks the Court to exercise its equitable power to increase the award. In support, Select Comfort argues the following points: (1) Defendants advertise using Select Comfort's trademarks

---

[5] Select Comfort also argues that Craig Miller admitted that a number of other statements on the Special Verdict were false, but that the jury "inexplicably" did not find liability for those statements. However, as discussed above, there was sufficient evidence for the jury to make those findings on Select Comfort's false advertising claims.

and similar words or phrases to trick customers and to divert them to their website; (2) Defendants knowingly engaged in rampant false advertising to convince customers (confused or not) to buy their products instead of Select Comfort's; and (3) Defendants' false statements deceived and influenced customers, causing them to buy Defendants' products. Further, Select Comfort asserts that the damage award must be based on Defendants' sales, rather than profits, because Defendants did not introduce evidence of costs. Select Comfort argues that the jury's damages award is only based on a small amount of sales and does not account for all of Defendants' profits, as required by the Lanham Act, subject to principles of equity. At a minimum, Select Comfort argues that the damages award must account for Defendants' profits on 4,228 beds sold.

Select Comfort also argues that the jury's damage award fails to account for all false statements in Defendants' sales calls during the entire damages period. Select Comfort submits that Defendants only produced records for eight months of Dires' phone calls, which represents only a snapshot of the sales calls involving false statements, yet the damages period for Dires covered 28 months and the damages period for Direct Commerce covered 12 months. In addition, Select Comfort argues that the damage award must include a calculation for false claims made through Defendants' websites, e-mail, and live chat.

Select Comfort encourages the Court to exercise its equitable and discretionary power to increase the damages award. Select Comfort emphasizes that in this case, the parties are direct competitors and that Defendants' advertising scheme is designed to target Select Comfort, trade off its goodwill and famous mark, and to convince customers

to purchase Defendants' products instead of Select Comfort's. Moreover, to effect this scheme, Select Comfort submits that Defendants engaged in illegal conduct and that the jury found that Defendants were liable for repeated use of seven false statements made to customers, three of which the jury determined were made "deliberately" and "with the intent to deceive." Select Comfort submits that this scheme resulted in a windfall to Defendants and that Defendants gained an intangible benefit while Select Comfort suffered a reputational loss. Finally, Select Comfort argues that Defendants continue to make false statements in their advertising, demonstrating that the damages award was not a deterrent.

Defendants disagree and submit that substantial evidence supports the jury's damages award. Such evidence includes, but is not limited to: testimony of the Vice President and Associate General Counsel for Select Comfort, Heather Somers, that Select Comfort was relying on their expert, Renee Marino, to demonstrate damages; Somers' testimony that she could not recall the name of anyone who purchased a Personal Comfort bed as a result of any alleged false statement; Marino's testimony that her opinions on damages were based on allegedly infringing advertisements and her explanation that she could not tie her opinions in any concrete way to damages arising from alleged false statements; testimony calling into question the foundation for certain information relied on by Marino in making her damages calculations; and evidence that other factors might have contributed to Select Comfort's lost profits (such as alleged misconduct of other competitors, as well as separate strategic decisions by Select

Comfort).  Defendants also point to evidence that they submitted to demonstrate the lack of a causal link between Defendants' conduct and Select Comfort's alleged damages.

Here, Defendants argue that enhanced damages are not warranted because the jury found in favor of Defendants on the majority of Select Comfort's false advertising claims and because Select Comfort failed to prove a causal nexus between Defendants' alleged misconduct and Select Comfort's damages.  As to the causal nexus, Defendants submit that Select Comfort offered a flawed damages theory devoid of credible evidence to demonstrate causation (that their business was harmed as a result of each of the false statements).  Defendant also submits that the jury made most of its credibility determinations in favor of Defendants.  Finally, Defendants argue that the jury's damages award adequately compensates Select Comfort.

The Court has carefully considered Select Comfort's motion and determines that there is sufficient evidence to support the jury's verdict.  The jury based its decision on the evidence in the case and was properly permitted to make credibility determinations while weighing the evidence.  The jury's damages award is reasonable and reasonably based on a fair reading of the evidence.  The Court finds no reason to increase the award. The Court, therefore, respectfully denies Select Comfort's motion to increase the damages award.

## III.    Cross-Motions for Determination of Entitlement to Attorneys' Fees and Non-Taxable Expenses

Both Select Comfort and Defendants move for a determination of entitlement to attorneys' fees and non-taxable expenses.  In support of its motion, Select Comfort

argues that it is the prevailing party on its Lanham Act and MDTPA claims. Select Comfort claims that it is entitled to attorneys' fees and costs under the Lanham Act because it established a Lanham Act violation and because this case is exceptional; and that it is entitled to the same under the MDTPA because it was the prevailing party and Defendants willfully engaged in a deceptive trade practice. More broadly, Select Comfort asserts that Defendants made false statements pervasively, deliberately, and willfully, and that Defendants' behavior is "beyond the pale" as they made numerous false statements about both their own product and Select Comfort's products.

Defendants, on the other hand, argue that they prevailed on Select Comfort's Lanham Act claims and, therefore, are the party entitled to an award of their attorneys' fees. Defendants submit that after protracted litigation, they defeated each of Select Comfort's central claims with a jury verdict in their favor on trademark infringement, trademark dilution, and unfair competition; that they incurred no liability for most of the asserted false statements; and that the jury awarded damages of less than 1% of what Select Comfort claimed and no lost profits as a result of Defendants' conduct. In addition, Defendants highlight that they prevailed on their counterclaim seeking declaratory judgment that Select Comfort has no rights in the phrase NUMBER BED. In sum, Defendants argue that Select Comfort's arguments in support of their motion run counter to the jury's verdict and reflect a failure to admit their defeat on the majority of claims in this case, plus a failure to acknowledge that the jury awarded only nominal damages for the false advertising statements on which it prevailed.

The Lanham Act authorizes that a court "in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). An exceptional case within the meaning of the Lanham Act is one in which a party's behavior went "beyond the pale" of acceptable conduct. *See Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 877 (8th Cir. 1994). For example, a case may be exceptional when a case is groundless, unreasonable, vexatious, or pursued in bad faith. *Id.* (citation omitted); *see also Scott Fetzer Co. v. Williamson*, 101 F.3d 549, 556 (8th Cir. 1996). Or, a case may be exceptional when a defendant willfully engaged in a deceptive practice. *See Scott Fetzer Co.*, 101 F.3d at 556; *Metric & Multistandard Components Corp.*, 635 F.2d at 716 (citations omitted).

The Court first considers which side is the "prevailing party." In doing so, the Court considers two factors: (1) whether the party "received at least some relief on the merits"; and (2) whether that relief materially altered the legal relationship between the parties "by modifying one party's behavior in a way that 'directly benefits' the opposing party." *SSL Servs., LLC v. Citrix Sys., Inc.*, 769 F.3d 1073, 1086 (Fed. Cir. 2014) (considering prevailing parties in a patent case). Here, both parties can claim to have prevailed on certain aspects of this case. For example, Select Comfort prevailed on its false advertising and MDTPA claims as they relate to seven false statements. However, Defendant prevailed on Select Comfort's claims of trademark infringement, trademark dilution, unfair competition, as well as Select Comfort's false advertising claims as they relate to the remaining asserted statements. The Court determines that because each party prevailed on certain claims, they are both prevailing parties in part. The Court further

determines that each party should, therefore, bear responsibility for their own costs in this action. In addition, regardless of who prevailed, the Court concludes that this case is not exceptional and, therefore, will not award attorneys' fees to either party. Instead, each side will bear responsibility for their own attorneys' fees. The Court acknowledges that under the MDTPA, there is no requirement that a case be "exceptional" to award fees. Even so, principles of equity require that each party bear their own costs in this case.

## IV.    Select Comfort's Motion for an Injunction

Select Comfort moves for an injunction as a remedy for the false advertising claims it prevailed on at trial under the Lanham Act and the MDTPA. Both the Lanham Act and the MDTPA permit injunctive relief where there is an adequate remedy at law when an injunction will protect against continuing acts of false advertising. *See Wildlife Research Ctr. v. Robinson Outdoors, Inc.*, 409 F. Supp. 2d at 1138-39 (citing *Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc.*, 633 F.2d 746, 753 n.7 (8th Cir. 1998).)

Here, the jury determined that Defendants are liable for several false statements, including statements that: (1) Defendants sell FDA registered mattresses; (2) their beds are tax-free; and (3) that Select Comfort's bed parts are not changeable or replaceable. Select Comfort asserts that the evidence introduced at trial established that Defendants' false advertising was pervasive, deliberate and willful. Moreover, Select Comfort argues that the false advertising did not stop after the trial and that, without the Court's intervention, Defendants' behavior will continue. Specifically, Select Comfort argues that Defendants' website and social media accounts currently feature false statements related to the trial and its outcome. For example, in their opening brief, Select Comfort

points to videos in which Defendants claim that "12 out of 12 jurors agreed" their A8 bed is superior to Sleep Numbers i8 bed and that "Jurors agreed we have the better bed!"

In its proposed order, Select Comfort seeks an injunction relating to the statements found by the jury to constitute false advertising. However, Select Comfort bases its motion on post-trial statements made by Defendants that were not at issue at trial.[6] Thus, Select Comfort has not demonstrated the existence of a risk that Defendants will continue to make any of the statements that were determined to be false at trial. Indeed, Craig Miller affirmed that the false statements attributed to Defendants have been stopped and that Defendants will not make those statements in the future. (Doc. No. 660.) The Court respectfully denies Select Comfort's motion for an injunction.

## V.     Defendant's Motion for a Judgment as a Matter of Law and for a New Trial

Defendants move for judgment as a matter of law and for a new trial with respect to the false advertising claims on which Select Comfort prevailed. In addition, Defendants move on the Court's denial of Defendants' request to offer evidence of the genericness of Select Comfort's trademarks, as well as Select Comfort's inability to establish: (1) a causal nexus between alleged misconduct and damages; (2) that the "Sleep Number" mark is famous; and (3) the willfulness of any alleged misconduct.

---

[6]     In their reply, Select Comfort asserts that Defendants' website contains certain false statements in a comparison chart, such as that its bed is FDA approved, there are no sales taxes outside of Florida, and that its bed has interchangeable parts. Select Comfort argues that these statements are "eerily similar" to the statements found to be false at trial. However, because these statements were not raised in their moving papers, the Court does not consider them.

As an initial matter, Select Comfort argues that aside from the false advertising claims, Defendants' motion improperly seeks relief on specific issues or elements of claims which Defendants prevailed. These include the issues of fame on Select Comfort's trademark dilution claim, strength of the Sleep Number mark on Select Comfort's trademark infringement claim, and causation and willfulness on various claims. Defendants submit that they advised Select Comfort that they would be seeking to preserve their arguments as to these sub-issues. The Court recognizes Defendants' intention to preserve the legal questions regarding these issues and concludes that it is proper to do so. However, the Court respectfully denies Defendants' motion as to the issues of fame on Select Comfort's trademark dilution claim, strength of the Sleep Number mark on Select Comfort's trademark infringement claim, and causation and willfulness on various claims, while noting that the issues have been preserved for purposes of a future appeal. The Court considers the remainder of Defendants' motion below.

Defendants request that the Court enter judgment as a matter of law in their favor on the statements that the jury determined to be false (this constitutes all statements except the first statement related to Personal Touch bed). Defendants argue that, as a matter of law, these statements are ambiguous and therefore not literally false. In support, Defendants assert that each statement could be reasonably understood as conveying more than one message and that Craig Miller testified as to why he considers each statement to be true when taken in context. In addition, Defendants argue that Select Comfort failed to show that the challenged statements actually deceived or tended

to deceive a large segment of its audience, pointing out that they failed to conduct surveys to make such a showing. Further, Defendants argue that Select Comfort failed to demonstrate that the statements were material, that they were injured by the statements, or that Defendants willfully engaged in false advertising.

Select Comfort argues that the Jury's Verdict with respect to these statements was correct. Select Comfort points to Miller's testimony as supporting literal falsity of five statements and argues that those statements have a single meaning to consumers. As to the remaining statement that Defendants contest (that Personal Comfort beds come with "no sales tax"), Select Comfort contends that other evidence proves that it is false or misleading, including an acknowledgement by a Dires employee and the fact that nearly every state requires consumers to pay tax on online purchases where the retailer does not collect it. In addition, Select Comfort argues that it offered evidence to show that the statements were disseminated, deceptive, material, and likely to cause harm.

After careful consideration, the Court concludes that a reasonable jury could have found in favor of Select Comfort on its false advertising claims with respect to the statements for which the jury found liability. In particular, there was sufficient evidence that could lead a reasonable jury to conclude that the statements were false or misleading, sufficiently disseminated, deceptive, material, and likely to cause harm. Thus, the Court respectfully denies the Defendants' motion insofar as it seeks renewed judgment or a new trial on the jury's finding of liability on these statements.

Defendants also argue that the jury instructions and Special Verdict Form included legal errors with respect to Select Comfort's false advertising claims. Specifically,

Defendants assert that the Court erroneously endorsed a presumption as to materiality with a showing of literal falsity. Select Comfort argues, however, that the jury instruction and verdict form correctly stated the law as to the presumption of materiality under the circumstances of the case. In particular, Select Comfort points out that such a presumption is appropriate where, as here, a defendant makes a literally false statement of fact or deliberately made misleading statements in a comparative advertisement. The Court agrees and finds no error.

## VI.    Bill of Costs

The parties also both separately filed a Bill of Costs seeking taxable costs and expenses. (Doc. Nos. 674, 676.) Both filings are based on the parties' respective arguments that they are prevailing parties. Under Rule 54(d) of the Federal Rules of Civil Procedure, costs, other than attorney fees, may be awarded to the prevailing party. The Court has "substantial discretion" in awarding such costs. *Lockridge v. Per Mar Sec. & Research Co.*, Civ. No. 12-2894, 2015 WL 1000689, at *1 (D. Minn. March 5, 2015). As discussed above, both parties prevailed in part at trial, and the Court concludes that each side should bear their own costs.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendants' Motion for Judgment as a Matter of Law and for a New Trial (Doc. No. [617]) is **DENIED**.

2.    Defendants' Joint Motion to Attorney Fees (Doc. No. [632]) is **DENIED**.

3.    Select Comfort's Motion for Determination of Entitlement to Attorneys'

Fees and Non-Taxable Expenses (Doc. No. [640]) is **DENIED**.

4.    Select Comfort's Motion to Renewed Judgment as a Matter of Law, to

Amend the Verdict, and/or for a New Trial (Doc. No. [643]) is **DENIED**.

5.    Defendants' Motion for Judgment as a Matter of Law and for a New Trial

(Doc. No. [644]) is **DENIED**.

6.    Select Comfort's Motion to Increase Damages Award (Doc. No. [654]) is

**DENIED**.

7.    Defendants' Motion for Entitlement to Attorney Fees and Costs (Doc.

No. [655]) is **DENIED**.

8.    Select Comfort's Motion for Permanent Injunction (Doc. No. [668]) is

**DENIED**.

9.    No costs shall be taxed and each side shall bear their own costs in this case.

(Doc. Nos. [674], [676].)

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  December 12, 2018                    s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             United States District Judge